IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| and | ) | |
| | ) | |
| THE SOUTH CAROLINA | ) | Civil Action No.  3:12-3639-CMC |
| DEPARTMENT OF HEALTH AND | ) | |
| ENVIRONMENTAL CONTROL | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | CONSENT DECREE |
| v. | ) | |
| | ) | |
| WEYLCHEM US, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

TABLE OF CONTENTS

I. JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

II. APPLICABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

III. DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

IV. CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

V. COMPLIANCE REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

VI. REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

VII. STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

VIII. FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

IX. DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -34-

X. INFORMATION COLLECTION AND RETENTION . . . . . . . . . . . . . . . . . . . . . . . . -37-

XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . . . . . . . . . . . . . . . . . . . -39-

XII. COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -41-

XIII. NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -42-

XIV. EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -44-

XV. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -44-

XVI. MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -45-

XVII. TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -45-

XVIII. PUBLIC PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -46-

XIX. SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -47-

XX. INTEGRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -47-

XI.  HEADINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -48-

XII.  FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -48-

XIII. APPENDICES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -48-

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree, alleging that Defendant WeylChem US, Inc. ("WeylChem") violated various provisions of the Clean Air Act ("CAA"), 42 U.S.C. §7401 et seq.; the Clean Water Act ("CWA"), 33 U.S.C. § 1301 et seq.; and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq.

Plaintiff South Carolina Department of Health and Environmental Control ("SCDHEC" or "the State") has filed a complaint in intervention and joins in this Consent Decree as to all causes of action involving the CAA and further alleges WeylChem violated provisions of the South Carolina Pollution Control Act, S.C. Code Ann. Sections 48-1-10 et seq. (2008 & Supp. 2012) in regard to such causes of action.

The federal complaint against Defendant alleges that, at its manufacturing facility in Elgin, South Carolina (the "Elgin Facility"), WeylChem violated (1) federal emissions standards for hazardous air pollutants for pharmaceutical production promulgated by EPA pursuant to Section 112 of the CAA, 42 U.S.C. § 7412 and set forth at 40 C.F.R. Part 63, Subparts A and GGG (the "Pharmaceutical MACT"), pesticide active ingredient production promulgated by EPA pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, and set forth at 40 C.F.R. Part 63, Subparts A and MMM (the "Pesticide MACT"), and miscellaneous organic chemical manufacturing promulgated pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, and set forth at 40 C.F.R. Part 63, Subparts A and FFFF (the "MON"); (2) federal new source performance standards ("NSPS") for Equipment Leaks of Volatile Organic Compounds in the Synthetic Organic Chemicals Manufacturing Industry, promulgated by EPA pursuant to Section

-1-

111 of the CAA, 42 U.S.C. § 7411, and set forth at 40 C.F.R. Part 60, Subparts A and VV; (3)

federal emission standards for hazardous air pollutants for benzene waste operations

promulgated pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, and set forth at 40 C.F.R.

Part 61, Subpart FF ("BWON") and equipment leaks (fugitive emission sources) of benzene set

forth at 40 C.F.R. Part 61, Subpart J; and (4) permits issued to the Defendant by the State

pursuant to the South Carolina State Implementation Plan and Title V of the CAA, 42 U.S.C. §

7661-7661f, requiring compliance with the Pharmaceutical MACT; Pesticide MACT; the MON;

40 C.F.R. Part 61, Subpart J; 40 C.F.R. Part 60, Subpart VV; and the BWON.

  The federal complaint further alleges that WeylChem violated the CWA by

repeatedly violating the terms of its National Pollution Discharge Elimination System

("NPDES") permit at its wastewater treatment plant in Wateree, South Carolina (the "Wateree

Facility") and by discharging pollutants without a permit.

  The federal complaint further alleges that WeylChem violated numerous

provisions of RCRA at both the Wateree and Elgin facilities, including the storage and treatment

of hazardous waste without a permit in violation of S.C. Code Ann. § 44-56-60 and S.C. Code

Ann. Regs. 61-79.270; failure to comply with multiple provisions that establish standards for the

management of hazardous waste at hazardous waste storage and treatment facilities under S.C.

Code Ann. Regs. 61-79.264 and R. 61-79.265 (for interim status facilities); failure to make

appropriate hazardous waste determinations under S.C. Code Ann. Regs. 61-79.262.11; improper

transportation of hazardous wastes in violation of S.C. Code Ann. Regs. 61-79.262.12, 61-

79.262.20 and 61-79. 262.30; and failure to manage universal waste in accordance with S.C.

Code Ann. Regs. 61-79.273.

Defendant does not admit any liability to the United States or the State arising out of the transactions or occurrences alleged in the federal complaint or the complaint in intervention.

The United States reviewed Financial Information and determined that Defendant has a limited ability to pay a civil penalty in this matter.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355; 42 U.S.C. §§ 7413(b) and 6928(a); and 33 U.S.C. § 1319(b) and over the Parties.  This Court has supplemental jurisdiction over the State law claims asserted by the State of South Carolina pursuant to 28 U.S.C. § 1367.  Venue lies in this District pursuant to 42 U.S.C. §§ 7413(b) and 6928(a)(1), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391 (b) and (c) and 1395(a), because the violations alleged in the Complaints are alleged to have occurred in, and Defendant conducts business in, this judicial district.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

-3-

2.      For purposes of this Consent Decree, Defendant agrees that the Complaints state claims upon which relief may be granted pursuant to 42 U.S.C. §§ 7413(b), 6925(a) and their implementing regulations, and 33 U.S.C. § 1301(a).

## II. APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States and the State, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Elgin Facility or the Wateree Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented. At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 4 and the United States Department of Justice and the State, in accordance with Section XIII of this Decree (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.     In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.  DEFINITIONS

7.     Terms used in this Consent decree that are defined in the CAA, CWA or RCRA or in regulations promulgated pursuant to these Acts shall have the meanings assigned to them in the Acts or such regulations, unless otherwise provided in this Decree, or, in relation to Compliance Requirements, Section V, in an Appendix.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "BWON" shall mean the National Emission Standard for Benzene Waste Operations, 40 C.F.R. Part 61, Subpart FF;

b.     "Complaints" shall mean the complaint filed by the United States in this action and the complaint in intervention filed by the State;

c.     "Consent Decree" or "Decree" shall mean this Decree and all Appendices attached hereto (listed in Section XXIII);

d.     "Date of Lodging" shall mean the day that the United States lodges this Consent Decree with the Court before the commencement of a public comment period;

e.     "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next business day;

f.     "Defendant" shall mean WeylChem US, Inc.;

-5-

g.    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

h.    "Effective Date" or "Date of Entry" shall have the definition provided in Section XIV;

i.    " Elgin Facility" shall mean Defendant's manufacturing facility located in Elgin, South Carolina;

j.    "Financial Information" shall mean the balance sheets, audited financial statements, projections, cash flow statements, and all other financial information whether provided orally or in writing that Defendant made available to the United States prior to the Date of Lodging of this CD;

k.    "MACT" shall mean the National Emission Standards for Hazardous Air Pollutants for Source Categories, 40 C.F.R. Part 63;

l.    "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

m.    "Parties" shall mean the United States, the State, and Defendant;

n.    "Plaintiffs" shall mean the United States and the State;

o.    "RTO" shall mean the regenerative thermal oxidizer that is the primary air pollution control device (also known as "RTO-2") at the Elgin Facility;

p.    "Section" shall mean a portion of this Decree identified by a roman numeral;

q.    "State" shall mean the South Carolina Department of Health and Environmental Control or SCDHEC;

-6-

r.    "United States" shall mean the United States of America, acting on behalf of EPA;

s.    "Wateree Facility" shall mean defendant's waste water treatment plant in Lugoff, South Carolina.

IV. <u>CIVIL PENALTY</u>

8.    Defendant shall pay the sum of $500,000 as a civil penalty, of which a total of $325,000 will be paid to the United States and $175,000 shall be paid to the State. Interest shall be paid on these amounts as set forth herein:

a.    Within 60 days of the date of Date of Entry, Defendant shall pay $32,500 to the United States and $17,500 to the State.

b.    Within one year of the Date of Entry, Defendant shall pay $97,500 to the United States and $52,500 to the State plus interest at the rate specified in 28 U.S.C. § 1961 accruing from the Date of Lodging.

c.    Within two years of the Date of Entry, Defendant shall pay $97,500 to the United States and $52,500 to the State plus interest at the rate specified in 28 U.S.C. § 1961 accruing from the Date of Lodging.

d.    Within three years of the Date of Entry, Defendant shall pay $97,500 to the United States and $52,500 to the State plus interest at the rate specified in 28 U.S.C. § 1961 accruing from the Date of Lodging.

9.    As to amounts due to the United States, Defendant shall pay by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following entry of the Consent Decree, by the Financial

-7-

Litigation Unit of the U.S. Attorney's Office for the District of South Carolina. At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in <u>United States et al. v. WeylChem US, Inc.</u>, and shall reference the civil action number and DOJ case number 90-5-2-1-08542/1, to the United States in accordance with Section XIII of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

10.    As to amounts due to the State, Defendant shall pay by sending a check made payable to SCDHEC and mailed to:

SCDHEC   Attn: Randy Stewart
Bureau of Air Quality
2600 Bull Street
Columbia, South Carolina 29201

11.    Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal or State or local income tax.

### V. COMPLIANCE REQUIREMENTS

12.    Defendant shall comply with all applicable state, federal and local laws and regulations under the CAA, CWA and RCRA with respect to the Elgin Facility and in all closure activities at the Wateree Facility.

A.    <u>CWA</u>

-8-

13.    Defendant shall comply with all applicable NPDES permit requirements at its Wateree facility.  Once it begins utilization of the Kershaw County wastewater treatment plant, it shall obtain and comply with all necessary permits, including a pretreatment permit.

14.    By no later than August 31, 2012, Defendant shall cease sending wastewater from its Elgin facility to the Wateree facility.  At no time, shall Defendant accept wastewater at Wateree from any other source.  By December 31, 2013, Defendant shall cease discharge of any wastewater to surface water at the Wateree facility (however, stormwater may continue to be discharged to surface water) and provide the State and EPA with a notice stating that it seeks to have its NPDES permit (No. SC0002682) inactivated.  Defendant may request an extension of the December 31, 2013 deadline for inactivating the NPDES permit if needed to complete closure activities at the Wateree facility. Such a request for extension must be submitted to EPA and SCDHEC.  EPA may approve the extension upon concurrence from SCDHEC.

B.    CAA

15.    Enhanced Leak Detection Program.  Defendant shall implement the Enhanced Leak Detection and Repair Program set forth in Appendix A in order to minimize or eliminate fugitive emissions of volatile organic compounds, benzene, volatile hazardous air pollutants, and organic hazardous air pollutants from equipment or components.

16.    Benzene Waste Operations NESHAP Enhancements Program.  Defendant shall implement the program set forth in Appendix B to ensure continuing compliance with the BWON.

-9-

17.     RTO Maintenance Schedule.  Defendant shall submit to EPA for approval an RTO maintenance schedule within 30 Days of the Date of Entry.  At a minimum, this plan should include a list of all regular maintenance actions to be performed, a description of each action, the frequency at which each action will be performed and record keeping practices.

18.     Amendments to Title V Permit.  Within 60 Days of the Date of Entry, Defendant shall submit to the State an application for proposed amendments to its Title V permit.  The proposed amendments shall include the following items:   (1) the procedures for ensuring that the RTO load is in continuous compliance and does not exceed the load established in the performance test dated January 20-21, 2009 or any subsequently accepted tests; (2) a description of the steps Defendant will take to meet its PSD avoidance limit for volatile organic compounds in light of its request to remove the use of the backup RTO (designated as RTO-1) as the method to meet the PSD avoidance limit; (3) a description of how Weylchem will meet the Pharmaceutical MACT new source requirements for Plant 5; and  (4) the RTO maintenance schedule to be approved pursuant to Paragraph 17.  Following submission of the application to amend the Title V permit, Defendant shall submit all information requested by the State with regard to the application.

19.     Sampling Connection Systems.  Attached as Appendix C to this Decree is Defendant's List of Sampling Connection Systems which sets forth how each system will demonstrate compliance with the Pharmaceutical MACT and/or Pesticide MACT, and the MON. Defendant shall maintain the accuracy of this list during the pendency of this Decree.

20.    Wastewater Sampling.  Attached as Appendix D to this Decree is Defendant's wastewater sampling plan for the Elgin Facility developed per 40 C.F.R. § 63.1257(b)(10)(vi).  Defendant shall comply with the plan during the pendency of this Decree.

21.    Revised NOCSRs.  Within 90 Days of the Date of Entry, Defendant shall submit to Plaintiffs for approval Notification of Compliance Status Reports for the Pharmaceutical MACT, Pesticide MACT, and the MON.

22.    Performance Test Plan.  If prior to termination of this Consent Decree, Defendant wishes to perform a site specific performance test under the Pharmaceutical MACT, Pesticide MACT, or the MON, for the purpose of setting new operating parameters for the RTO, it shall seek approval for a test plan from both the State and EPA and shall not proceed without approval of both plaintiffs.  Defendant shall send EPA and the State a copy of the final report for the test plan upon its receipt of the report.  Once the test is performed, Defendant shall timely provide the results to EPA and the State.

23.    Wastewater Treatment Plan.  Within 60 Days of the Date of Entry, Defendant shall submit to Plaintiffs for approval a wastewater treatment plan for the Elgin Facility.  The plan shall contain:

a) A list of all wastewater streams that are collected and conveyed to the facility's on-site wastewater treatment system.  For each listed wastewater stream, the Defendant shall provide the name of the stream, a description of the stream, the location of the stream (plant number and process identification), a list of applicable regulations that apply to the system, the stream classification and supporting documentation (affected, non-affected, group 1 or group 2), a description of how the Defendant transports the stream, and a

-11-

description as to how the Defendant will treat the stream to demonstrate compliance with the MON, Pharmaceutical and/or Pesticide MACTs and any other applicable regulatory requirements.

b) A list of all wastewater streams that are collected and conveyed to an off-site wastewater treatment facility.  For each listed wastewater stream, the Defendant shall provide the name of the stream, a description of the stream, the location of the stream (plant number and process identification), a list of applicable regulations that apply to the system, the stream classification and supporting documentation (affected, non-affected, group 1 or group 2), a description of how the Defendant transports the stream, and a description as to how the Defendant will treat the stream to demonstrate compliance with the Pharmaceutical MACT, Pesticide MACT, and/or the MON and any pre-treatment requirements mandated by the Kershaw County pretreatment program.

c)  A detailed description of how the wastewater streams are handled and treated when the on-site wastewater treatment system is not operational.

d)  If wastewater streams are co-mingled and subject to different or multiple regulations, Defendant shall provide a detailed description of how the Defendant ensures that the streams are meeting the most stringent treatment standard.

24.     Startup, Shutdown and Malfunction Plan ("SSMP"):  Attached as Appendix E to this Decree is Defendant's SSMP for the RTO.  Defendants shall comply with this SSMP during the pendency of the Decree.   If Defendant makes any changes to its SSMP, it shall submit the proposed revision to EPA and the State for approval.

-12-

C.    RCRA

    25.    Elgin Facility

        a.    Defendant shall comply with the RCRA regulations at the Elgin Facility for the less than 90 day hazardous waste tanks, containers and the less than 90 day hazardous waste container storage area identified in the June 9, 2010 Notice of Violation as follows:

            i.    receiver tanks DS-27, S-26, SR-17, S-27 and SR-11 shall comply with all of the less than 90 day large quantity generator requirements at S.C. Code Ann. Regs. R. 61-79.262.34(a);

            ii.    hazardous waste containers and their storage areas shall comply with S.C. Code Ann. Regs. 61-79.265.173(a) regarding closed containers; 61-79.265.173(d) regarding hazardous waste code labeling; 61-79-262.34(a)(2) regarding accumulation start date; 61-79.265.174 and 61-79.265.15(d) regarding inspections and inspection recordkeeping for container storage areas; and 61-79.265.175(a) and (b)(1) regarding cracks and/or gaps in secondary containment; and

            iii.    tanks TSS-229, TS-27 and their tank systems shall comply with S.C. Code Ann. Regs. 61-79.265.196 regarding taking the tank out of service and 61-79.265.193(a) and (f) regarding secondary containment.

        b.    Within 60 Days of the Date of Entry, Defendant shall hire a qualified Professional Engineer to conduct a tank integrity assessment for DS-3044 and Diffuser Tank [T-3000] in accordance with S.C. Code Ann. Regs. 61-79.265.191. Within 14 Days of the receipt of the assessment, Defendant shall submit copies of the assessment, including the

-13-

certification required under S.C. Code Ann. Regs. 61-79.265.191(a), to EPA and the State. If, as a result of the assessment, a tank or ancillary equipment is found to be leaking or unfit for use, Defendant shall comply with the requirements of S.C. Code Ann. Regs. 61-79.265.196.

c.    Within 45 Days of the Date of Entry, Defendant shall sample the sediment in ET-1, T-3000, DS-3044, and Basin 1 according to the sampling plan submitted to EPA on June 27, 2012.

d.    Within 30 Days of the Date of Entry, Defendant shall conduct a leak test on ET-1 as set forth in the Leak Test Protocol submitted to EPA on September 20, 2012 and on Basins 1, 2, 5, and 7, and the Batch Tank as set forth in the Leak Test Protocol submitted to EPA on August 23, 2012. If Basins 1,2, 5, 7, ET-1 or the Batch Tank fail the leak test, Defendant shall conduct the applicable response activities required pursuant to S.C. Code Ann. Regs 61-79.265.196 and 61-79.265.197.

e.    Defendant shall implement the Equalization Basin ("EB") Cleanout, Inspection and Soil Sampling Protocol attached to this Consent Decree as Appendix F. If soil samples must be taken pursuant to Appendix F and if such samples exhibit the toxicity characteristic ("TC") at S.C. Code Ann. Regs. 61-79.261.24 , EPA reserves all rights available to it to require additional actions regarding EB under Sections 3008(h) and 3013 of RCRA. If the samples do not exhibit the TC, no further action will be required regarding the EB subject to the reservations in Paragraph 73.

f.    Except for the non-routine receipt and storage of a waste that is hazardous due to corrosivity only, Defendant shall not store hazardous waste in Basins 1, 2, 5 and 7. Defendant shall not store any hazardous waste in the EB.

-14-

g.    Upon discovery of any hazardous waste spill in Basins 1, 2, 5, and 7 (other than of a waste that is hazardous due to corrosivity only), Defendant shall empty any such basin that received the hazardous waste spill.  Defendant shall initiate the removal within no more than three business days from the discovery.  Defendant shall sample the accumulated liquid and/or sediment for each removal it conducts to determine if it is hazardous waste.

h.    Defendant shall, within 10 Days of Entry, submit a written clarification to EPA concerning the timing and scope (i.e., the tank systems to which the exemption applies) of the applicability of the wastewater treatment unit exemption. This description must specify: how hazardous waste determinations will be addressed for any sludges removed from the tanks and, if hazardous, how such sludges will be managed; and how any spills or releases from such tank systems will be addressed, including appropriate hazardous waste determinations and cleanups in compliance with applicable RCRA requirements.  Upon approval by EPA, Defendant shall maintain this document with its waste determinations.

i.    Defendant shall review, and as necessary, revise each hazardous waste determination whenever a change in the process occurs that could affect whether the wastes are hazardous and/or the applicable hazardous waste codes.

j.    If, at any time, the Defendant produces an off-spec batch of any product and the off-spec batch is to be disposed, Defendant shall conduct a hazardous waste determination on the batch.

k.    Whereas Permit No. 1004 issued by Kershaw County allows "Pump and Haul" activities for wastewater discharges above 150,000 gallons per day (gpd) in Phase II (discharges up to 150,000 gpd will under normal conditions flow through the Elgin

-15-

Facility's sewer pipe into Kershaw County's collection and transmission system near the intersection of White Pond Road and Whiting Way) and such "Pump and Haul" activities involve trucking wastewater via public roads from the Elgin Facility to the discharge point specified in Permit No. 1004 and whereas such trucking may occur until such time that the County completes modifications to its sewer system such that it has the capacity to handle the entire wastewater discharge from the Elgin Facility, Defendant shall not transport any hazardous waste under Permit No. 1004 unless such activity is in compliance with S.C. Code Ann. Regs. 61-79.262.12 ; 61-79.262 Subpart B; 61-79.262.30; 61-79.262.31; 61-79.262.32; and 61-79.262.33.

        l.      For three years after the Date of Entry, Defendant shall submit to EPA the industrial discharger monitoring reports at the same time it submits them to Kershaw County.

        m.     Defendant shall collect a sample of wastewater stored in ET-1 and analyze the sample for target compound list VOCs using Method 8260, target compound list SVOCs using Method 8270, and metals using Methods 6010 and 7470. Defendant shall submit the VOC and SVOC results, and also submit the results of all metals that are on the RCRA toxicity characteristic list at S.C. Code Ann. Regs. 61-79.261.24 or on the underlying hazardous constituent list at S.C. Code Ann. Regs. 61-79.268.48, and include the data verification package to EPA within 60 Days of the date of Entry of this Consent Decree. This submission shall also list all manufacturing processes that would contribute to ET-1 at the time of sampling and anticipated constituents from each process.

-16-

n.      Sampling conducted by Defendant to satisfy requirements listed in the subparagraphs above shall adhere to EPA's *The Field Branches Quality System and Technical Procedures* which can be found at http://www.epa.gov/region4/sesd/fbqstp/index.html.

26.     Wateree Facility. The Wateree Facility is subject to a RCRA 3013 Administrative Order issued by EPA on September 27, 2000; EPA's conditional no further action revocation letter of March 28, 2006; and notices of violation dated October 27, 2006 and June 9, 2010. EPA recognizes that the Defendant has already undertaken some investigations at the Wateree Facility and that the next phase of investigation (herein called the Phase 4 Investigation) is intended to build on those investigations and fill data gaps. Defendant has submitted drafts of a work plan for the investigation and EPA has reviewed such drafts and provided comments. Defendant has submitted a revised Phase 4 Investigation Work Plan dated September 15, 2012 that is awaiting review and approval by EPA pursuant to Paragraphs 27-31 of this Consent Decree.

After the Phase 4 Investigation Work Plan is approved by EPA, Defendant shall conduct an investigation of environmental conditions at the Wateree Facility pursuant to the approved Phase 4 Investigation Work Plan and in accordance with the schedule in the approved Work Plan. Following EPA's review of the results of the Phase 4 Investigation and consideration of the site-specific conditions at the Wateree Facility, it may require additional work of Defendant (investigation, risk assessment, and corrective measures, which may include but are not limited to institutional controls and monitored natural attenuation), subject to Defendant's right to invoke dispute resolution pursuant to Section IX. EPA's decision to require or not require

-17-

further work will be based on whether, and the extent to which, the results of this Phase 4

Investigation sampling exceed: 1) for the soil analytical results, non-organic background

concentrations and EPA's Regional Soil Screening Levels (RSSLs) for industrial or residential

direct contact scenarios; and 2) for the groundwater analytical results, non-organic background

concentrations and the following: drinking water MCLs, EPA tapwater Regional Screening

Levels (RSLs) for compounds that do not have MCLs, EPA Region 4 freshwater surface water

screening values for hazardous waste sites based on protection of aquatic organisms (Table 1 of

the EPA Region 4 Ecological Risk Assessment Bulletin - Supplement to the Risk Assessment

Guidance for Superfund), or National Recommended Water Quality Criteria based upon

protection of freshwater aquatic life and protection of human health for consumption of

organisms.

All work required of Defendant under this Paragraph shall be work that is necessary to

protect potential receptors from releases of contaminants from the management of hazardous

waste or from solid waste management units at the Wateree Facility that pose an unacceptable

risk above background conditions.  Defendant shall submit to EPA work plans for any additional

investigation or work within 45 Days of being notified of EPA's determination that such

additional work is required and conduct such additional work in accordance with the approved

work plan, including the approved schedule.  EPA's review and approval of such work plans will

be pursuant to Paragraphs 27-31 of this Consent Decree.

To the extent that Defendant is required to implement corrective measures, Defendant

will be required to provide financial assurance consistent with SCHWMR R. 61-79.264, Subpart

H.  If Defendant does not satisfy the SCDHEC requirements under the South Carolina Industrial

Wastewater Facility Closure program at the Wateree facility, Defendant must submit a plan for RCRA closure of the two surface impoundments pursuant to SCHWMR R. 61-79.265.110 within 45 Days of notification from EPA that such a plan is required. EPA will review such plan pursuant to Paragraphs 27-31 of this Consent Decree and Defendant shall close the facility in accordance with the approved plan.

> D.     General Provisions

27.    Approval of Deliverables.  All documents required to be submitted for approval under this Consent Decree or any Appendix shall be submitted to EPA and the State (if involving the CAA) pursuant to the Notice provisions of Section XIII of this Decree. After review of any plan, report, or other item that is required to be submitted for approval pursuant to this Consent Decree, EPA (after consultation with the State, in the case of CAA deliverables) shall in writing: a) approve the submission; b) approve the submission upon specified conditions; c) approve part of the submission and disapprove the remainder; or d) disapprove the submission.

28.    If the submission is approved pursuant to Paragraph 27(a), Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part, pursuant to Paragraph 27(b) or (c), Defendant shall, upon written direction from EPA (after consultation with the State, in the case of CAA deliverables), take all actions required by the approved plan, report, or other item that EPA (after consultation with the State, in the case of CAA deliverables) determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the

-19-

determination of severability, the specified conditions or the disapproved portions, under Section IX of this Decree (Dispute Resolution).

29.    If the submission is disapproved in whole or in part pursuant to Paragraph 27(c) or (d), Defendant shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

30.    Any stipulated penalties applicable to the original submission, as provided in Section VII of this Decree, shall accrue during the 45-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part for material substantive issues; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

31.    If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA (after consultation with the State, in the case of CAA deliverables) may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to Defendant's right to invoke Dispute Resolution and the right of EPA (and the State, in the case of CAA deliverables) to seek stipulated penalties as provided in the preceding Paragraphs.

32.    <u>Permits</u>.  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Nothing herein is intended to require a RCRA permit for Defendant's compliance obligations at the Elgin and Wateree facilities under Paragraphs 25 and 26 herein.  Defendant may seek relief under the provisions of Section VIII of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI. <u>REPORTING REQUIREMENTS</u>

33.    In addition to any report required pursuant to any Appendix, within 30 Days after the end of each calendar-year quarter (i.e., by April 30, July 30, October 30, and January 30) after lodging of this Consent Decree, until complete termination of this Decree pursuant to Section XVII, Defendant shall submit a quarterly report for the preceding quarter that addresses all progress under Section V of this Decree and the Appendices.  The report shall include, but not be limited to: the status of any construction or compliance measures; completion of milestones; and status of permit applications.  The report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States (and the State, in

-21-

the case of the CAA) of such violation and its likely duration, in writing, within ten working Days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII of this Consent Decree (Force Majeure).

34.     Whenever any violation of this Consent Decree, or of any applicable permits, or any other event affecting Defendant's performance under this Decree, or the performance of its facilities, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA (and the State, in the case of the CAA) orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

35.     All reports shall be submitted to the persons designated in Section XIII of this Consent Decree (Notices).

36.     Each report submitted by Defendant under this Section or any Appendix shall be signed by an official of WeylChem and include the following certification:

> I certify under penalty of law that this document and all
> attachments were prepared under my direction or supervision in
> accordance with a system designed to assure that qualified
> personnel properly gather and evaluate the information submitted.

-22-

> Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

37.    The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CAA, CWA, RCRA or their implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

38.    Any information provided pursuant to this Consent Decree may be used by the United States or the State in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

VII.  STIPULATED PENALTIES

39.    Defendant shall be liable for stipulated penalties to the United States and the State for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure), wherein such violation includes failing to perform any obligation required by the terms of this Decree, including any Appendix, any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

40.    Late Payment of Civil Penalty

If Defendant fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $1000 per Day for each Day that the payment is late.

41.    Compliance Milestones

a.    The following stipulated penalties shall accrue per violation per Day for each violation of the requirements of any provision of Section V and its Appendices, not specified in subparagraph c. or d. (except Section V. C. (RCRA) and its Appendices) :

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1000 | 1st through 14th Day |
| $ 1500 | 15th through 30th Day |
| $ 5000 | 31st Day and beyond |

b.    The following stipulated penalties shall accrue per violation per Day for each violation of the requirements of any provision of Section V .C. (RCRA) and its Appendices:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 750 | 1st through 14th Day |
| $ 1000 | 15th through 30th Day |
| $ 3000 | 31st Day and beyond |

c.    Defendant shall pay per day stipulated penalties as follows for each Day after August 31, 2012 that Defendant has not ceased sending its wastewater from its Elgin facility to its Wateree facility and for each Day after December 31, 2013 (or the period allowed under any extension granted pursuant to Paragraph 14) that Defendant has not ceased its

discharge to the Wateree River of wastewater (however, stormwater may continue to be

discharged) and provided the State and EPA with a notice stating that it seeks to have its NPDES

permit (No. SC0002682) inactivated.

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 750 | 1st through 30th Day |
| $ 1000 | 30th through 60th Day |
| $ 2000 | 60th Day and beyond |

       d.      The following stipulated penalties shall accrue with regard to the

specific provisions of Appendix A (Enhanced Leak Detection Program):

| Violation | Stipulated Penalty |
|---|---|
| Failure to timely develop a Facility-Wide LDAR Document as required by ¶ 1 or failure to timely update the Document on an annual basis if needed pursuant to ¶ 1. | Period of noncompliance  Penalty per day<br><br>1 - 15 days             $150<br>16 - 30 days          $250<br>31 days or more     $500 |
| Each failure to perform monitoring at the frequencies set forth in ¶ 2  or, if applicable, ¶¶ 3,4. | $100 per component per missed monitoring event, not to exceed $10,000 per month per process unit |
| Each failure to perform monitoring in accordance with Method 21 as required by ¶ 5. | Monitoring       Penalty per monitoring<br>frequency        event per process unit<br>for the component<br><br>Every 2 years    $21,000<br>Annual           $16,000<br>Semi-Annual    $10,000<br>Quarterly       $ 8,000<br>Monthly         $ 4,000 |
| Each failure to comply with any other requirement of ¶ 5. | $1,000 per week |

| | |
|---|---|
| Each failure to timely perform a first attempt at repair as required by ¶ 8, unless not required to do so under ¶ 15(c) or ¶ 18(c). | $50 per day for each late day |

| | Period of noncompliance | Penalty per component per day |
|---|---|---|
| Each failure to timely perform a final attempt at repair as required by ¶ 8, unless not required to do so under ¶ 15(c) or ¶ 18(c). | Between 1 and 15 days<br>Between 16 and 30 days<br>Over 30 days | $100<br>$200<br>$300 per day for each day over 30 |

| | Period of noncompliance | Penalty per component per day |
|---|---|---|
| Each failure to:<br><br>(1) Perform Repair Verification Maintenance as required by ¶ 8, unless not required to do so under ¶ 15(c) or ¶ 18(c).<br>(2) Undertake the drill-and-tap repair method as required by ¶ 10, unless not required to do so under ¶ 15(c) or ¶ 18(c).<br>(3) Comply with the Delay of Repair requirements of ¶ 13. | Between 1 and 15 days<br>Between 16 and 30 days<br>Over 30 days | $ 50<br>$100<br>$150 per day for each day over 30 |

| | |
|---|---|
| Each failure to record the information required by ¶ 11. | $50 per component per missed item of information |
| Failure to install a Certified Low-Leaking Valve or Certified Low-Leaking Valve Packing Technology when required to do so during a Scheduled Maintenance | $10,000 per failure |

| | Period of noncompliance | Penalty per day per valve |
|---|---|---|
| Other than failures under the previous category of stipulated penalties (above), each failure to install a Certified Low-Leaking Valve or Certified Low-Leaking Valve Packing Technology during the timeframe required by ¶¶ 15(c), (d), (e), as applicable | 1 - 15 days<br>16 - 30 days<br>31 days or more | $ 250<br>$ 500<br>$1,000 |

| | |
|---|---|
| Failure to install a connector that is least likely to leak, using good engineering judgment, for the service and operating conditions that the connector is in, when required to do so during a Scheduled Maintenance | $10,000 per failure |

| | | |
|---|---|---|
| Other than failures under the previous category of stipulated penalties (above), each failure to install a connector that is least likely to leak, using good engineering judgment, for the service and operating conditions that the connector is in during the timeframe required by ¶ 18(c). | Period of noncompliance<br><br>1 - 15 days<br>16 - 30 days<br>31 days or more | Penalty per day<br>per connector<br><br>$ 250<br>$ 500<br>$1,000 |
| Failure to implement the training program as required by ¶ 21. | $10,000 per month per annual training requirement | |
| Each failure to have each monitoring technician undertake the certification required in ¶ 22. | $50 per day per technician | |
| Each failure to perform the QA/QC procedures as required in ¶ 23. | $1000 per missed procedure per quarter | |
| Each failure to conduct an LDAR audit that conforms to the requirements of ¶¶ 24-26. | $5000 per month per audit | |
| Each failure to timely submit:<br><br>(1) A Corrective Action Plan that conforms to the requirements of ¶ 28;<br>(2) A Certification of Compliance that conforms to the requirements of ¶ 29. | Period of noncompliance<br><br>1 - 15 days<br>16 - 30 days<br>31 days or more | Penalty per day<br>per violation<br><br>$ 50<br>$150<br>$250 |
| Each failure to implement any corrective actions required by the CAP in a timely manner as required by ¶ 28. | Period of noncompliance<br><br>1 - 15 days<br>16 - 30 days<br>31 days or more | Penalty per day<br>per violation<br><br>$ 250<br>$ 500<br>$ 750 |
| Each failure to identify a piece of equipment subject to LDAR requirements, if the failure was determined through a federal, state, or local investigation.  If, in addition to failing to identify the piece of equipment, Defendant also failed to monitor it, then penalties of $100 per component per missed monitoring event, not to exceed $10,000 per month per process unit, shall apply. | $500 per component | |

42.    Reporting Requirements

a.        The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI and the Appendices (except for reports related to RCRA):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 500 | 1st through 14th Day |
| $ 1500 | 15th through 30th Day |
| $ 2000 | 31st Day and beyond |

b.        The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI and the Appendices related to RCRA:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 350 | 1st through 14th Day |
| $ 1000 | 15th through 30th Day |
| $ 2000 | 31st Day and beyond |

43.        Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. With regard to Section V Paragraph 26 (Wateree workplan) only, the accrual shall be tolled beginning 60 Days after EPA receives a submission or resubmission requiring its review and approval and until Defendant has received EPA's decision under Paragraph 27 or 29 regarding the submission or resubmission even if the submission or resubmission is determined by EPA to

-28-

be deficient. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

44.     Subject to the payment periods set forth in Paragraph 46, Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand. With respect to matters under the CAA, Defendant shall pay stipulated penalties to the United States and the State within 30 Days of a written demand by either Plaintiff, and Defendant shall pay 50 percent of the total stipulated penalty amount due to the United States and 50 percent to the State. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

45.     Either Plaintiff may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

46.     Stipulated penalties shall continue to accrue as provided in Paragraph 43, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest (running 30 Days from the date of demand of stipulated penalties) to the United States and/or the State within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.     With regard to Section V Paragraph 26 (Wateree workplan) only, stipulated penalties shall accrue during any dispute resolution until 45 Days after Defendant serves on the United States its Statement of Position under Paragraph 59. If the dispute is resolved in Defendant's favor, stipulated penalties shall not be paid. If the United States issues a

-29-

Statement of Position under Paragraph 60 that does not resolve the dispute in Defendant's favor, the accrual of stipulated penalties under Section VII will resume when the United States serves the Defendant with its Statement of Position and will continue to accrue until the earlier of the violation ending, the required performance occurring, or, if the Defendant submits its complete motion requesting judicial resolution under Paragraph 61, the accrual of stipulated penalties during the pendency of the dispute before the Court shall be determined by the District Court. If Defendant prevails in its position regarding any dispute submitted for judicial review, Defendant shall not pay accrued stipulated penalties. If Defendant does not prevail in District Court, Defendant shall pay all accrued penalties determined by the District Court to be owing, together with interest (running 30 Days from the date of demand of stipulated penalties), within 60 Days of receiving the District Court's decision or order, except as provided in subparagraph d, below.

           c.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest (running 30 Days from the date of demand of stipulated penalties), within 60 Days of receiving the Court's decision or order, except as provided in subparagraph d, below.

           d.      If the United States appeals the District Court's decision, stipulated penalties shall not accrue. If Defendant appeals the District Court's decision, stipulated penalties shall accrue. Defendant shall pay all accrued penalties determined to be owing, together with interest (running 30 Days from the date of demand of stipulated penalties), within 15 Days of receiving the final appellate court decision.

47.    Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.  Defendant shall pay stipulated penalties owing to the State in the manner set forth in Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

48.    Defendant shall not deduct stipulated penalties paid under this Section in calculating its federal, state or local income tax.

49.    If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

50.    Subject to the provisions of Section XI of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or the State for Defendant's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of the CAA, CWA,  RCRA or any other law or regulation, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation by EPA (and the State, in the case of CAA matters).

## VIII.  FORCE MAJEURE

51.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

52.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA (and the State, in the case of the CAA), within 72 hours of when Defendant first knew that the event might cause a delay.  Within seven Days thereafter, Defendant shall provide in writing to EPA (and the State, in the case of the CAA) an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation

-32-

supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements, unless such failure is itself due to a force majeure event, shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

53.    If EPA (after a reasonable opportunity for review and comment by the State, in the case of the CAA) agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA (after a reasonable opportunity for review and comment by the State in the case of the CAA) for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

54.    If EPA (after a reasonable opportunity for review and comment by the State, in the case of the CAA) does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

55.    If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a

-33-

force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 51 and 52, above. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.  DISPUTE RESOLUTION

56.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States or the State to enforce any obligation of Defendant arising under this Decree.

57.    The issuance, renewal, modification, denial or revocation of a permit and the issuance of orders or other actions of the State are not subject to dispute resolution under this Decree but, rather, shall be subject to challenge under State law.

58.    Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States (and the State, in the case of a matter involving the CAA) a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United

States (after consultation with the State in matters involving the CAA) shall be considered binding unless, within 14 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

59.    Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States (and the State, in matters involving the CAA) a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

60.    The United States (after consultation with the State in matters involving the CAA) shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

61.    Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States (and the State, in matters involving the CAA), in accordance with Section XIII of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 15 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting

-35-

factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any

schedule within which the dispute must be resolved for orderly implementation of the Consent

Decree.  The motion may not raise any matter that was not identified in the Defendant's

Statement of Position.

62.     The United States (after consultation with the State in matters involving

the CAA) shall respond to Defendant's motion within the time period allowed by the Local

Rules of this Court.  Defendant may file a reply memorandum to the extent permitted by the

Local Rules.

63.     Standard of Review

a.     Disputes Concerning Matters Accorded Record Review.  Except

as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 59

pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules

or any other items requiring approval by EPA and/or the State under this Consent Decree; the

adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other

disputes that are accorded review on the administrative record under applicable principles of

administrative law, Defendant shall have the burden of demonstrating, based on the

administrative record, that the position of the United States is arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law.

b.     Other Disputes.  Except as otherwise provided in this Consent

Decree, in any other dispute brought under Paragraph 59, Defendant shall bear the burden of

demonstrating that its position complies with this Consent Decree.

64.     The invocation of dispute resolution procedures under this Section shall

-36-

not extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, not directly in dispute, unless EPA agrees or the Court holds otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 46. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X. INFORMATION COLLECTION AND RETENTION

65.    The United States, the State, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Consent Decree;

b.    verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree;

c.    obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.    obtain documentary evidence, including photographs and similar data; and

e.    assess Defendant's compliance with this Consent Decree.

66.    Upon request, Defendant shall provide EPA and the State or their authorized representatives splits of any samples taken by Defendant. Upon request, EPA and the State shall provide Defendant splits of any samples taken by EPA or the State.

-37-

67.    Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the State, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

68.    At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States and the State at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, Defendant shall deliver any such documents, records, or other information to EPA or the State. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant. However, no documents, records, or other information created

-38-

or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

69.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

70.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

71.     Defendant hereby certifies, to the best of its knowledge and belief, after thorough inquiry, (a) that it has submitted to the United States Financial Information that fairly, accurately, and materially sets forth its financial circumstances; (b) that those circumstances have not materially changed between the time the Financial Information was submitted to the United States and the time Defendant executes this Consent Decree.

XI.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

72.     This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaints filed in this action through the Date of Lodging.

a.     The United States agrees that entry of this Consent Decree will supersede the RCRA 3013 Administrative Order, and that when Defendant satisfactorily

-39-

completes the requirements under Paragraph 26 of this CD with regard to environmental conditions at the Wateree Facility, Defendant will have satisfied all of Defendant's obligations under the conditional no further action revocation letter (3/28/06) and notices of violation (10/27/2006; 6/9/2010).

b.    Notwithstanding any other provision of this Consent Decree, the United States and the State reserve, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information provided, or the financial certification made in Paragraph 71, is false, or in a material respect, inaccurate.

73.    The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 72.  This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the CAA, CWA, RCRA or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 72.   The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Elgin Facility or Wateree Facility, whether related to the violations addressed in this Consent Decree or otherwise.

74.    In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, other appropriate relief relating to the Elgin Facility or the Wateree Facility, Defendant shall not assert, and may not maintain, any

-40-

defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 72 of this Section.

75.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CAA, CWA, RCRA or with any other provisions of federal, State, or local laws, regulations, or permits.

76.     This Consent Decree does not limit or affect the rights of Defendant or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

77.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII. COSTS

78.     The Parties shall bear their own costs of this action, including attorneys'

fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIII. NOTICES

79.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-2-1-08542/1

**and**
[as to CAA]
Beverly Spagg, Chief
U.S. Environmental Protection Agency
Air & EPCRA Enforcement Branch
Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303-8960

[as to CWA]
Maurice L. Horsey IV, Chief
Municipal and Industrial Enforcement Section
Clean Water Enforcement Branch
U.S. Environmental Protection Agency
Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303-8960

[as to RCRA]
César A. Zapata, Chief
RCRA and OPA Enforcement and Compliance Branch

-42-

RCRA Division
U.S. Environmental Protection Agency
Region 4
61 Forsyth Street
Atlanta, GA 30303-8960

To EPA:

[as to CAA]
Beverly Spagg, Chief
U.S. Environmental Protection Agency
Air & EPCRA Enforcement Branch
Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303-8960

[as to CWA]
Maurice L. Horsey IV, Chief
Municipal and Industrial Enforcement Section
Clean Water Enforcement Branch
U.S. Environmental Protection Agency
Region 4
61 Forsyth Street
Atlanta, GA 30303-8960

[as to RCRA]
César A. Zapata, Chief
RCRA and OPA Enforcement and Compliance Branch
RCRA Division
U.S. Environmental Protection Agency
Region 4
61 Forsyth Street
Atlanta, GA 30303-8960

To the State:

Randy Stewart, Manager
Air Enforcement Section
Bureau of Air Quality
SCDHEC
2600 Bull Street
Columbia, SC 29201-1708

To Defendant:

-43-

Jeffrey A. Dugger
Chief Operating Officer
WeylChem US, Inc.
2114 Larry Jeffers Road
Elgin, SC 29045

with copy to:

Michael L. Hardy
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114-1291

80.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

81.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.  EFFECTIVE DATE

82.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XV.  RETENTION OF JURISDICTION

83.    The Court shall retain jurisdiction over this case until termination of this

-44-

Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Decree.

## XVI.  MODIFICATION

84.     The terms of this Consent Decree, including any attached Appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

85.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 63, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.  TERMINATION

86.     a.     Partial Termination.  After Defendant has completed the requirements of Section V (Compliance Requirements), Parts A and B of this Decree and all the incorporated Appendices and has maintained continuous satisfactory compliance with this Consent Decree for a period of four years, has complied with all other requirements of this Consent Decree, and has paid the civil penalty and any accrued stipulated penalties or interest as required by this Consent Decree, Defendant may serve upon the United States and the State a Request for Termination of Parts A and B of Section V, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

-45-

b.     <u>Final Termination.</u>  After termination under subparagraph (a) and after Defendant has completed the requirements of Section V (Compliance Requirements), Part C and all incorporated Appendices and has maintained continuous satisfactory compliance with this Consent Decree, has complied with all other requirements of this Consent Decree, and has paid any accrued stipulated penalties or interest as required by this Consent Decree, Defendant may serve upon the United States a Request for Final Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

87.     Following receipt by the United States and the State of Defendant's Request for Termination under a, or by the United States under b, in the preceding paragraph, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination. If the United States after consultation with the State (with regard to partial termination) agrees that the Decree may be terminated partially or finally, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree partially or finally.

88.     If the United States (after consultation with the State with regard to partial termination) does not agree that the Decree may be terminated partially or finally, Defendant may invoke Dispute Resolution under Section IX of this Decree.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 59 of Section IX, until 28 Days after service of its Request for Termination.

### XVIII.  PUBLIC PARTICIPATION

89.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The

-46-

United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX. SIGNATORIES/SERVICE

90. Each undersigned representative of Defendant, the State, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

91. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail or email with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. The parties agree that the Defendant need not file an answer to the Complaints unless or until the Court expressly declines to enter this Consent Decree.

## XX. INTEGRATION

92. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the

-47-

Decree and supercedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXI. HEADINGS

93.    Headings to the sections and subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXII.  FINAL JUDGMENT

94.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Defendant.

## XXIII. APPENDICES

95.    The following appendices are attached to and part of this Consent Decree:

"Appendix A" is the Enhanced Leak Detection and Repair Program;

"Appendix B" is the Benzene Waste NESHAP Enhancements Program;

"Appendix C" is the List of Sampling Connection Systems;

"Appendix D" is the Wastewater Sampling Plan;

"Appendix E" is the SSMP for the RTO; and

"Appendix F" is the Equalization Basin Cleanout, Inspection and Soil Sampling

-48-

Protocol.

Dated and entered this 25th day of March, 2013.

UNITED STATES DISTRICT JUDGE
District of South Carolina

WE HEREBY CONSENT to the Entry of the Consent Decree, subject to the public notice and

comment provisions of 28 C.F.R. § 50.7:

FOR PLAINTIFF UNITED STATES OF AMERICA:

Dated: 12/20/12

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
U.S. Department of Justice

Dated: 12/20/12

LORI JONAS
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044

-50-

WE HEREBY CONSENT to the Entry of the Consent Decree, subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR PLAINTIFF UNITED STATES OF AMERICA:

Dated: 12/18/12

MARY J. WILKES
Regional Counsel and Director
Office of Environmental Accountability
United States Environmental Protection Agency
Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303


Dated: 12/14/12

ELLEN ROUCH
Associate Regional Counsel
United States Environmental Protection Agency
Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303


Dated: 12/17/12

BONNIE SAWYER
Associate Regional Counsel
United States Environmental Protection Agency
Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303


Dated: 12/14/12

MICHELE WETHERINGTON
Assistant Regional Counsel
United States Environmental Protection Agency
Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303

-51-

WE HEREBY CONSENT to the Entry of the Consent Decree, subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR PLAINTIFF UNITED STATES OF AMERICA:

Dated: ___12/20/12___

S/ JAMES C. LEVENTIS, JR
JAMES C. LEVENTIS, JR. (#9406)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201

-52-

WE HEREBY CONSENT to the Entry of the Consent Decree:

FOR PLAINTIFF STATE OF SOUTH CAROLINA:


Dated: _December 18, 2012_    _Elizbeth C. Dieck_
                              ELIZABETH A. DIECK
                              Deputy Director
                              South Carolina Department of
                              Health & Environmental Control
                              2600 Bull St.
                              Columbia, S.C. 29201-1708


Dated: _December 19, 2012_    _Jacquelyn S. Dickman_
                              JACQUELYN S. DICKMAN
                              Deputy General Counsel
                              South Carolina Department Of
                              Health & Environmental Control
                              2600 Bull St.
                              Columbia, S.C. 29201-1708


Dated: _December 19, 2012_    _Nancy L. Roberts_
                              NANCY L. ROBERTS
                              Staff Attorney
                              South Carolina Department Of
                              Health & Environmental Control
                              2600 Bull St.
                              Columbia, S.C. 29201-1708

WE HEREBY CONSENT to the Entry of the Consent Decree:

FOR DEFENDANT WEYLCHEM US, INC.:

Dated: _29 Nov 12_

_____
JEFFREY A. DUGGER
Chief Operating Officer
WeylChem US, Inc.
2114 Larry Jeffers Road
Elgin, SC 29045